UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY - 7 2003

| | |
|---|---|
| Terry Barnett, and | ) |
| Strom Closures Incorporated | ) |
| | ) Case No. 02 C 3747 |
| Plaintiffs, | ) |
| | ) Judge Milton I. Shadur |
| vs. | ) |
| | ) |
| Willard Strom, Victoria Strom and | ) |
| C&S Manufacturing Company | ) |
| | ) |
| Defendants. | ) |
| | ) |

FILED

MAY 6 2 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT THAT DEFENDANTS ARE ESTOPPED TO DENY INFRINGEMENT OF U.S. PATENT NO. 5,819,474

NOW COMES DEFENDANTS, by their undersigned attorneys, and for their Response to Plaintiffs' Motion for Summary Judgment that Defendants are Estopped to Deny Infringement of U.S. Patent No. 5,819,474, state as follows.

## I.   SUMMARY OF THE ARGUMENT

Plaintiffs' Motion for Summary Judgment that Defendants are Estopped to Deny Infringement of U.S. Patent No. 5,819,474 should be denied for the following reasons.

➢   The accused product does not infringe U.S. Patent No. 5,819,474 (hereinafter the "'474 patent" or the "patent in suit") either literally or under the doctrine of equivalents. Plaintiffs admit through deposition testimony that the accused product does not include all of the elements required under the claims of the '474 patent. Plaintiffs admit that they have no evidence of anyone ever using the accused product in an infringing manner.

➢   Marking estoppel as a doctrine is of questionable validity. The use of marking estoppel to prove infringement is inconsistent with the U.S. law of patent infringement. Due to the fact that Plaintiffs admit that they have no evidence of actual infringement, the application of marking estoppel to prove infringement in this case would allow Plaintiffs to circumvent well-established principles of patent law.

➢   Even if marking estoppel is a viable doctrine of law, its application in this case is not warranted because the accused product sold by Defendants, is not the same packaged product that was marked. The packaged product previously sold and marked by the Defendants is not the subject of Plaintiffs infringement allegations.



## II.    FACTUAL BACKGROUND

In early 1994, Willard Strom invented the "Stik 'n Zip" product that would become the basis for what would eventually issue as the '474 patent. The basic concept for this product was to allow the user to create an opening in a temporary shelter by adhering a zipper with adhesive on its back to the temporary shelter. The opening is created when the user slits the temporary shelter between the interlocking teeth of the zipper as the zipper is opened. Thus, a closeable opening in the temporary shelter is created. On September 20, 1994, Willard Strom filed an application for letters patent for this invention. (Exhibit A).

Shortly after filing his patent application, Willard Strom and his friend, Jeff Davenport, formed Strom Closures for the purposes of manufacturing and selling the Stik 'n Zip product. Sometime in or about 1995, Willard Strom entered into a license agreement with Strom Closures wherein Strom Closures was granted an exclusive license under Patent Application Serial No. 08/309,195, to manufacture, market, advertise, merchandise, distribute and sell the product covered under the patent application. (Exhibit B). This 1995 agreement was signed by Willard Strom as Licensor and by Jeff Davenport, on behalf of Strom Closures, as Licensee. At the time the 1995 license was signed, neither Willard Strom nor Strom Closures know what scope of patent coverage would be obtained when, and if, the patent application ever issued as a patent.

In or about early 1996, plaintiff Terry Barnett became involved with Strom Closures as an investor and officer of the company. On September 6, 1996, the board of directors of Strom Closures accepted the resignation of Jeff Davenport. At that same meeting, the board of directors entered into a consent action wherein all contracts entered into by officers of Strom Closures were ratified, approved and confirmed, except those signed by Jeff Davenport. (Exhibit C). Thus, the board of directors terminated the 1995 license agreement. On that same day, another license agreement was apparently entered into. (Exhibit D). This 1996 license also purportedly granted Strom Closures the exclusive right to manufacture, package, market and sell the Product covered under the Patent Pending U.S. Application Serial Number 08/309,195. As the '474 patent had still not yet issued, at the time that the 1996 license agreement was entered into, neither Willard Strom nor Strom Closures knew what the eventual scope of patent protection would be.

During the prosecution of the patent application, it soon became apparent that Willard Strom was not going to be able to receive patent protection for his broadest claims, (i.e. an

2

adhesive backed zipper used to create a closeable opening in a temporary shelter). These broad claims were rejected by the United States Patent Office as obvious in view of the prior art. (Exhibit E). Therefore, in order to obtain patent protection, Willard Strom had to substantially narrow the scope of his claims by adding limitations to his independent claims. The limitations that were added require that the adhesive backed zipper be used in conjunction with "a pair of eyeling screws fastened to a floor and a pair of locks, each of said locks securing one of said pull tabs from each zipper to one of said screws." (Exhibit F). After adding this limitation to the claims, the '474 patent issued on October 13, 1998.

The business relationship between Willard Strom and Terry Barnett began to deteriorate in or about 1997. This deterioration led to Willard Strom ending his affiliation with Strom Closures in November 1998. At the time of his departure from Strom Closures, Willard Strom was the sole owner of the '474 patent.

Subsequent to leaving Strom Closures, Willard Strom started C&S Manufacturing (hereinafter "C&S") in or about March 1999. In April 1999, C&S began production of "The Zipper" which was in competition with Strom Closures' Stik 'n Zip product. The Zipper product, as sold, is an adhesive backed zipper structure. The product does not include a pair of eyeling screws and a pair of locks, as called for by each of the asserted independent claims of the '474 patent. As commercialized, The Zipper product was packaged in a box that depicted use of the zipper mechanism in conjunction with an eyeling screw and lock, and accompanied by an instruction sheet similarly depicting the zipper mechanism with the screw and lock. (Plaintiffs Exhibits 13 and 31). At that time, C&S also advertised The Zipper as a zipper mechanism "which can be padlocked." (Plaintiffs Exhibit 15). Defendants marked this packaged product with the '474 patent number. Defendants continued to reference the '474 patent on the product packaging and informational material up until December 2001, when Willard Strom lost title to the '474 patent.

In January 2001, Willard Strom filed a voluntary petition in bankruptcy under Chapter 7 of title 11 of the United States Bankruptcy Code. At that time, the '474 patent was included among Willard Strom's assets to be sold to pay off his creditors. On December 18, 2001, the bankruptcy trustee sold all of Willard Strom's rights, title and interest in and to the '474 patent to Terry Barnett. (Exhibit G). The sale of Willard Strom's rights in the '474 patent was free and clear of any and all Encumbrances. (Exhibit H, p.3). According to the Asset Purchase

Agreement wherein Terry Barnett purchased the '474 patent, the term "Encumbrance" is a defined term to include, *inter alia*, any licenses dealing with the '474 patent. (Exhibit H, p.2). Because the '474 patent was sold to Terry Barnett free and clear of any and all Encumbrances, the alleged license agreements of 1995, and 1996 between Willard Strom and Strom Closures were terminated upon the sale of the '474 patent.

After losing title to the '474 patent to Terry Barnett, Defendants changed all packaging and informational material for The Zipper product to remove any and all references to the '474 patent and also screw and lock/padlocking uses. (Exhibit I; Exhibit J at 64:12 - 65:10 and 114:1 - 10)  As such, The Zipper product currently sold in no way references the '474 patent or any locking use.[1]

Plaintiffs brought this patent infringement suit in May 2002, Plaintiff Barnett now being the owner of the '474 patent.

## III.   ARGUMENT

### A.     Summary Judgment Standard

A court may grant a motion for summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).* A genuine issue exists if there is sufficient evidence for a reasonable jury to return a verdict favorable to the non-movant. *Id.* at 249; *Valley Liquors, Inc. v. Renfield Importers Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987).  The burden is on the moving party to show the absence of any issues as to material fact and that it is entitled to judgment as a matter of law.  A court is obliged to draw all reasonable inferences in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255 (1986); *Furnish v. SVI Systems, Inc.*, 207 F.3d 455, 448 (7th Cir. 2001).  Summary judgment should not be granted where there are issues of motive and intent. *Holland v. Jefferson National Life Insurance Co.*, 833 F.2d 1307, 1312 (7th Cir. 1989).

Plaintiffs have not met their burden with respect to summary judgment.  In bringing this patent infringement case, Plaintiffs have not adduced a single shred of evidence that the Defendants' product infringes the '474 patent. (Exhibit J, Barnett Dep. 118:23-119:2).  The file

---

[1] To the extent that there are any units of The Zipper product on the shelves of vendors that have any references to the '474 patent, these products were sold to those vendors before Willard Strom lost title to the '474 patent because the product packaging was changed upon transfer of the patent to Mr. Barnett. (Exhibit I).

history of the '474 patent reveals that the claim scope that Plaintiffs are now seeking enforce was given up during the prosecution history through a narrowing amendment. (Exhibits E and F). Therefore, prosecution history estoppel prevents Plaintiffs from even asserting that Defendants' product infringes the '474 patent under the doctrine of equivalents. Moreover, in deposition testimony, Plaintiffs have admitted that the accused product does not infringe the '474 patent because it does not have all of the required elements. (Exhibit J, Barnett Dep. 72:4-74:2). Furthermore, there is no contributory, or inducement to infringe the '474 patent because there is no evidence that anyone has ever used the Defendants' product in an infringing manner. Incredibly, Plaintiffs admit that they have never even seen the Defendants' product being used by anyone. (Exhibit J, Barnett Dep. 50:14-20, 74:3-6, and 118:23-119:2). As such, there is no question that Plaintiffs have not met their burden with respect to summary judgment.

Having no evidence of infringement, Plaintiffs seek to turn the unique facts of this case into an undeserved windfall. As indicated in the factual background, *supra*, one of the Defendants, Willard Strom, was the inventor of the '474 patent. Moreover, Mr. Strom was the sole owner of the patent until December 18, 2001 when he lost title to the patent through bankruptcy. As the inventor and owner of the '474 patent, Mr. Strom knew full well that the product that he sold, "The Zipper", was not, in and of itself, covered by the '474 patent. Instead, The Zipper product was merely an element that, when used under very specific circumstances, could be covered by the '474 patent. Those circumstances require that The Zipper be used in conjunction with a pair of eyeling screws fastened to a floor and a pair of locks to secure the pull tabs of the zipper to the eyeling screws. As the owner of the '474 patent, Mr. Strom was well within his right to advertise the locking mechanism and label his product as patented when used in that specific manner. This was not and could not be an admission that that The Zipper, in and of itself, was covered by the '474 patent. Thus, marking estoppel cannot be used to estop Defendants from denying infringement. Due to the fact that 1) the '474 patent does not cover The Zipper product; and 2) the Defendants were only referencing a specific use of The Zipper product when they advertised the locking mechanism and marked the packaging with the '474 patent, the doctrine of marking estoppel is not applicable. As such, Plaintiffs are not entitled to summary judgment.

**B.      The Zipper Product Does Not Infringe the '474 Patent**

**1.       There is No Direct Infringement of The '474 Patent**

Determining whether a product or method is covered by a patent claim is a two step process. First, the claims of the patent must be construed as a matter of law to determine their proper scope. *See, Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976-79 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). Second, a determination must be made as to whether the properly construed claims read on (cover) the accused product or method. *See, Id.; Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1359-60 (Fed. Cir. 2000).

Every limitation of a patent claim is material and, if a single claim limitation is not present in the accused product or method, literally or equivalently,[2] the claim cannot cover that product or method as a matter of law. *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1161 (Fed. Cir. 1997). If an independent claim does not cover an accused product or method, then all claims that depend therefrom cannot cover that product of method. *See Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

The '474 patent contains three independent claims, (claims 1, 8 and 12). (Exhibit A). These independent claims are set forth below, with the limitations underscored that are completely missing from Defendants' packaged product, and for which there is no reference on Defendants Zipper product package or Zipper product informational materials.

1.  A temporary shelter for use with an existing frame structure having a closeable door-shaped opening for allowing access to the shelter with the door-shaped opening being installable by a user at a desired selectable location, the temporary shelter comprising in combination:

(a) a flexible sheet defining an inner shelter space;

(b) a pair of zipper structures, each zipper structure having a separable zipper chain composed of two interlocking halves having front side edges and first ends, the interlocking halves having fastening elements attached to flexible tapes substantially along the front side edges, the fastening elements being interlocked by a slider in a closed position to provide confronting front side edges with the first ends of the interlocking halves being adjacent to one another, the fastening elements being separated by the slider in open position with the first ends of the interlocking halves being positionable in outwardly extending directions from one another, the slider operatively connected to the

---

[2] Under the "all limitations" rule, an alleged "equivalent" cannot wholly vitiate a requirement (limitation) present in the claim. *See, e.g., Pennwalt Corp. v. Durand Wayland, Inc.*, 833 F.2d 931, 934 35, 939 (Fed. Cir. 1987) (en banc).

interlocking halves, each flexible tape having an adhesive strip located on a back portion of the flexible tape and extending along side and parallel to the fastening elements, a pair of protective strips, each of said protective strips in removable engagement with the adhesive of each zipper structure, the adhesive strips of the zipper structures attached to an outside surface of the flexible sheet when the protective strips are disengaged with back portions of the flexible tapes in confronting engagement with the outside surface of the flexible sheet so that the zipper structures are in a parallel spaced apart upright relationship from one another with each zipper chain being adjacent and parallel to a slit cut into the flexible sheet extending immediately adjacent to the zipper chain to a bottom edge of the flexible sheet to provide the closeable door-shaped opening in the flexible sheet for allowing access into the inner shelter space, the closeable door shaped opening defining a rectangular shaped door flap having a width selectable by the user, each slider having a pair of pull tabs; and

(c) a pair of eyeling screws fastened to a floor and a pair of locks, each of said locks securing one of said pull tabs from each zipper to one of said screws.

8. A method of providing a temporary shelter having a closeable door-shaped opening for allowing access to the shelter with the door-shaped opening being installable by a user at a desired selectable location, comprising the steps of:

(a) defining an inner shelter space with a flexible sheet;

(b) attaching a pair of self applying zipper structures to an outside surface of the flexible sheet in a spaced apart upright relationship from one another by peeling away protective strips removably secured to the pair of self-applying zipper structures to expose adhesive strips disposed on a back portion of the zipper structures and pressing the adhesive strips in confronting engagement with the outside surface of the flexible sheet;

(c) cutting a pair of spaced apart parallel slits in the flexible sheet which are parallel to and in alignment with the zipper structures to provide the closeable door-shaped opening and form a closeable door flap in the flexible sheet defined by the pair of parallel slits and a door flap edge of the flexible sheet for allowing access into the inner shelter space, the door flap having a width selectable by the user;

(d) fastening a pair of eyeling screws to a floor; and

(e) locking the temporary shelter with a pair of locks, each of said locks securing a pull tabs from each zipper to one of said eyeling screws.

12. A method of providing a temporary shelter having a closeable door-shaped opening for allowing access to the shelter with the door-shaped opening being installable by a user at a desired selectable location, comprising the steps of:

(a) defining an inner shelter space with a flexible sheet;

(b) attaching a pair of self applying zipper structures to an outside surface of the flexible sheet in a spaced apart upright relationship from one another by peeling away protective strips removably secured to the pair of self-applying zipper structures to expose adhesive strips disposed on a back portion of the zipper structures and pressing the adhesive strips in confronting engagement with the outside surface of the flexible sheet;

(c) cutting a pair of spaced apart parallel slits in the flexible sheet which are parallel to and in alignment with the zipper structures to provide the closeable door-shaped opening and form a closeable door flap in the flexible sheet defined by the pair of parallel slits and a door flap edge of the flexible sheet for allowing access into the inner shelter space, the door flap having a width selectable by the user;

(d) attaching an additional pair of self-applying zipper structures to an outside surface of the flexible sheet in a spaced apart upright relationship from one another;

(e) cutting a window flap into the flexible sheet which includes a pair of spaced apart parallel slits in the flexible sheet which are parallel to and in alignment with the additional zipper structures to provide a window opening; and

(f) attaching mated hook and loop type fastening surfaces to a bottom flap edge and a window ledge for detachably securing the bottom window flap edge to the window ledge of an existing frame structure.

## 2.     Prosecution History Estoppel Prevents Infringement By The Doctrine Of Equivalents

In addition to there being no literal infringement of the '474 patent, prosecution history estoppel prevents the plaintiff from asserting that The Zipper infringes the '474 patent by the doctrine of equivalents.  Prosecution history estoppel prevents a patent owner from obtaining a construction of a claim that would in effect resurrect subject matter surrendered during the course of proceedings in the Patent and Trademark Office.  *See, Lever Brothers Co. v. Proctor & Gamble Co.*, 668 F. Supp. 924, 933 (D. N.J. 1987) ("Prosecution history estoppel refers to the idea,…that a patent applicant who specifically narrows his claim during the application's review before the patent office, will be barred from later asserting infringement against that aspect of his claim which was deleted by amendment.").  In the case at hand, prosecution history estoppel prevents Plaintiffs from asserting that the accused product infringes the '474 patent despite the fact that there is no evidence that the product has ever been used with eyeling screws or locks.

During the prosecution of the '474 patent, the examiner rejected all claims which broadly covered only the zipper mechanism as obvious in light of the prior art.  However, in an Final

Official Action dated September 23, 1997, the examiner stated that the dependent claims relating to eyelet screw and locks would be allowable if they were rewritten in independent form.

> "Claims 6, 8, 9, 13-15, 19 and 20 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. The allowable subject matter is directed towards the inclusion of eyebolts and locks (in associated [sic.] with the zippers) to prevent unwanted entry through the doorway of the shelter, as well as the inclusion of VELCRO or similar-type fasteners in the window slit to secure the window flap to a window ledge." (Exhibit E, p. 5)

In response to the 9/23/97 Official Action, the applicant amended the independent claims to include the limitations of eyelet screws and locks. (Exhibit F). These claims as amended were allowed, and the '474 patent issued on October 13, 1998.

Due to the fact that during the prosecution history of the '474 patent, the applicant narrowed the claims seeking to cover the zipper mechanism only, to those requiring the limitations of using the zipper mechanism in conjunction with eyelet screws and locks, the patent owner cannot now seek to enforce subject matter that was given up during the prosecution. Thus, The Zipper product, which does not literally infringe the '474 patent, cannot infringe it by the doctrine of equivalents either. *See, Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1469 (Fed. Cir. 1998)("Prosecution history estoppel provides a legal limitation on the application of the doctrine of equivalents by excluding from the range of equivalents subject matter surrendered during the prosecution of the application for the patent.").

### 3.    There is No Indirect Infringement of the '474 Patent

In addition to direct infringement, one can be liable for patent infringement as an inducer or a contributor, 35 U.S.C. §§ 271(b) and (c). However, The Zipper product as packaged and marketed by Defendants since December 2001, provides no basis for liability for inducing or contributory infringement, since the product being sold and the related informational material no longer constitute anything more than the zipper mechanism which was found to be prior art during the prosecution of the '474 patent. Further, there can be no liability for inducing or contributory infringement unless it can be shown that such activity resulted in direct

9

infringement of the patent. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961). Plaintiffs admit that they have no evidence of direct infringement. (Exhibit J, at 50:14-20, 74:3-6, and 118:23-119:2).

### C.   Marking Estoppel is a Questionable Doctrine of Law that is Inconsistent with Title 35

The current state of marking estoppel is unclear. The Federal Circuit has even questioned the validity of the marking estoppel line of cases. *Smithkline Diagnostics v. Helena Laboratories Corp.*, 859 F.2d 878, 890 (Fed. Cir. 1988). Moreover, the doctrine has been rejected by at least one district court. *High Frequency Products, Inc. v. Wynn's Climate Systems, Inc.*, 892 F. Supp. 1515 (S.D. Fla. 1995), aff'd, 91 F.3d 167 (Fed. Cir. 1996)(unpublished disposition). The validity of the doctrine marking estoppel has been questioned because it appears to be inconsistent with the provisions of Title 35. *Id.* at 1519. Specifically, the doctrine of marking estoppel is inconsistent with 35 U.S.C. §§271 and 292.

In the *High Frequency* case, the court held that marking estoppel is not and cannot be an independent cause of action. *High Frequency* at 1519. The court stated that in cases where there is no actual infringement, it would be absurd to preclude an accused infringer from defending on the grounds that the product doesn't infringe. *Id.* Moreover, in cases where there is infringement, the patent holder has adequate remedies under Title 35 for infringement (35 U.S.C. § 271) and mismarking (35 U.S.C. § 292). *Id.*

As indicated, *supra*, the Plaintiffs in the instant case have no evidence of infringement. Yet they seek to have this Court invoke a questionable doctrine of law to allow them to recover damages for patent infringement of a patent that is not infringed. This is inconsistent with Title 35. If Plaintiffs' have a case for patent infringement, they should prove it by having this Court interpret the claims of the '474 patent and then applying the properly construed claims to the accused device. Alternatively, if the Plaintiffs believe that Defendants falsely marked their product, Plaintiffs are free to file a false marking case under 35 U.S.C. § 292. However, the Plaintiffs are reluctant to do so because they are currently marking their product the same way. Moreover, Plaintiffs have been marking their product in that manner for the past eight years.

As indicated in the *High Frequency* case, marking estoppel is not an independent cause of action for patent infringement. More often then not, when a court finds that marking estoppel applies, it only does so after having found that the patent in suit is indeed infringed. Thus,

marking estoppel is nothing more than an alternative ground for the court's decision. *Keller et al. v. Clark Equipment Company et al.*, 1981 U.S. Dist. LEXIS 14893, *51 (North Dakota 1981); *See also, Caanan Products, Inc., v. Edward Don & Company*, 273 F. Supp 492, 496 (N.D. Ill. 1966)(the court found that the "evidence of infringement was overwhelming" and estoppel applied); *Gridiron Steel Company v. Jones & Laughlin Steel Corporation et al.*, 361 F.2d 791, 796 (6th Cir. 1966)(finding "there is no question that [Jones & Laughlin] took the flange construction feature from the '397 patent" and that estoppel applied). Thus, a court must at least review whether or not the accused device infringes the asserted patent.

The doctrine of marking estoppel blurs the line between infringement and false marking under Title 35. Moreover, the application of marking estoppel renders the false marking provisions under 35 U.S.C. § 292 moot. If a party were able to "prove" infringement solely by marking estoppel, they would never have need to bring a cause of action under the false marking statue. Moreover, there would be an economic incentive for a plaintiff to avoid false marking claims because a party who recovers under patent infringement is not obliged to split its damages with the Patent and Trademark Office as is required under the false marking statute. Due to the fact that Title 35 already has specific and separate remedies for patent infringement and false marking, the doctrine of marking estoppel is no longer viable.

### D.    Even If Marking Estoppel is a Viable Doctrine of Law, It Does Not Apply Under These Facts and Circumstances

Marking estoppel, assuming it is a viable doctrine of law, is equitable in nature. Marking estoppel only applies "when a consideration of *all* aspects of defendant's pertinent conduct makes it inequitable for him to take a position contrary to his prior statements or actions." *High Frequency Products, Inc. v. Wynn's Climate Systems, Inc.*, 892 F. Supp. 1515, 1519 (S.D. Fla. 1995)(emphasis added). When one looks at all aspects of Defendants' conduct it becomes clear that marking estoppel should not apply to the facts and circumstances of this case.

As the inventor, Willard Strom knew that the claims of the '474 patent did not cover The Zipper as a stand alone product. However, he also knew that if The Zipper were to be used in conjunction with eyelet screws and locks, such a use was covered by the '474 patent. Prior to December 18, 2001, when Mr. Strom was the sole owner of the '474 patent, it was his right to advertise and put the public on notice that certain uses of this device were covered by a valid U.S. Patent. Moreover, the patent law encourages that owners of patents mark their product to notify the public. *See*, 35 U.S.C. §287. Such marking allows owners to recover damages in

infringement actions. *Id*. Thus, as owner of the '474 patent it was Mr. Strom's right and duty to mark his product. Moreover, it was his right to tout the patented uses of his product. Marking The Zipper with the '474 patent number and touting its patented uses did not morph the zipper mechanism into a product that is covered by the '474 patent. *See, Smithkline Diagnostics, Inc., v. Helena Laboratories Corp.*, 859 F.2d 878, 890-1 (Fed. Cir. 1988)("We do not accept the proposition that an admittedly noninfringing product can be converted by estoppel to an infringing product.").

Up to December 18, 2001, Willard Strom was the owner of the '474 patent. (Exhibit G). There can be no dispute that Strom Closures has had no license emanating from Willard Strom since December 18, 2001. (Exhibit H, see Defendants' Response to Plaintiffs' Statement of Fact at 4). In the absence of the patent owner, Willard Strom, being a plaintiff, liability for patent infringement occurring prior to December 18, 2001 cannot be sought by the Plaintiffs in this case. *Independent Wireless Telegraph Co. c. Radio Corp. of America*, 269 U.S. 459, 468 (1926).

When The Zipper packaged product was marked with the '474 patent, Willard Strom was the owner of the patent. The packaged product included an instruction sheet which denoted the padlocked use. Marketing materials also cited the locking use. Because all of the asserted claims of the '474 patent call for the locking feature, Defendants' marking of The Zipper product was appropriate. The question of whether the Defendants sale of The Zipper product prior to December 18, 2001 constitutes infringement of the '474 patent, however, is not at issue in this action. *Id*.

Since December 18, 2001, Defendants have marketed The Zipper product without any reference on the packaging or in accompanying informational materials concerning use of the zipper mechanism in conjunction with eyeling screws and locks. Accordingly, The Zipper product now being marketed by Defendants since December 18, 2001, is a different packaged product than the product sold previously, the difference being that the patented locking feature of the '474 patent claims is no longer associated with the zipper mechanism being sold by Defendants.

Since the marked product and the currently accused product are diametrically different to the point where the patentable feature of the claimed invention is no longer present in the accused packaged product, it would be inequitable to apply the doctrine of marking estoppel to

the sales activity of Defendants which is the subject of this infringement action.  The facts in this case do not warrant such an outcome.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court deny to Plaintiffs' Motion for Summary Judgment that Defendants are Estopped to Deny Infringement of U.S. Patent No. 5,819,474.

Dated: May 2, 2003

By:

Carl E. Moore, Jr.
Thomas I. Ross
Carl E. Myers
MARSHALL, GERSTEIN & BORUN
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
Attorneys for Defendants

13

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing DEFENDANTS MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT THAT DEFENDANTS ARE ESTOPPED TO DENY INFRINGEMENT OF U.S. PATENT NO. 5,819,474 and DEFENDANTS COURT ORDERED MEMORANDUM OF LAW THAT THE ASSERTION OF MARKING ESTOPPEL DOES NOT PREVENT DEFENDANTS FROM ADVANCING ITS POSITION OF NONINFRINGEMENT were served via Hand Delivery on May 2, 2003 to:

        Dennis McWilliams
        Mark Nahnsen
        Barnes & Thornburg
        209 South LaSalle Street, Suite 410
        Chicago, Illinois 60604-1202

                                Carl Myers

2